IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MILES ORLANDO LEE, | : | No. 4:06-cv-1824 |
| Plaintiff, | : | |
| | : | (Judge Jones) |
| v. | : | |
| | : | (Magistrate Judge Smyser) |
| WARDEN LINDSEY, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

April 21, 2009

This matter is before the Court on the Report and Recommendation of

Magistrate Judge J. Andrew Smyser (Doc. 129), which recommends that the

defendants' Motion to Dismiss Or, in the Alternative, Motion for Summary

Judgment (Doc. 115) be granted and that this action be dismissed for *pro se*

plaintiff Miles Orlando Lee's failure to exhaust administrative remedies.  For the

reasons set forth below, the Report and Recommendation will be adopted, the

defendants' motion granted, and this action dismissed.

## I.   STANDARD OF REVIEW

Where, as here, objections are filed to the report of a magistrate judge, the

district court makes a *de novo* determination of those portions of the report or

specified proposed findings or recommendations to which objections are made.  28

U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980). Under this standard, a court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. *Id.* Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

## II.   BACKGROUND

Lee commenced this *pro se Bivens* action with the filing of a complaint on September 18, 2006. (Doc. 1.) After numerous fits and starts, Lee filed an amended complaint on April 25, 2007. (Doc. 48.) After the defendants' motion for a more definite statement was granted, and after numerous extensions and orders directing him to do so, Lee filed a second amended complaint (Doc. 105) on June 23, 2008.

The Report and Recommendation fully sets forth the allegations of the second amended complaint, which are well known to the parties for whom the Court writes, and because the dispositive issue before the Court is Lee's exhaustion of administrative remedies, these allegations will not be reiterated at

length here. In general, Lee alleges that officials at the Canaan United State

Penitentiary in Waymart, Pennsylvania ("USP-Canaan") retaliated against him for

filing grievances and lawsuits.

## III.   DISCUSSION

The Prison Litigation Reform Act of 1996 ("PLRA") "requires that

prisoners seeking relief in federal court must first exhaust the administrative

remedies available at the prison level." *Williams v. Beard*, 482 F.3d 637, 639 (3d

Cir. 2007) (citing 42 U.S.C. § 1997e(a)). "Exhaustion is mandatory, and prisoners

must exhaust all 'available' remedies, even where the relief sought cannot be

granted through the administrative process. Additionally, the PLRA requires

'proper exhaustion,' meaning that the prisoner must comply with all the

administrative requirements and not merely wait until there are no administrative

remedies 'available.'" *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).

"[P]rison grievance procedures supply the yardstick for determining what steps are

required for exhaustion," *id.* (quoting *Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir.

2004)), and a prisoner must carry a grievance through any available appeals

process before his administrative remedies will be deemed exhausted, *see Spruill*,

372 F.3d at 227-28, 232.

In a recent case (ironically involving Lee), the Third Circuit summarized the administrative procedures a federal prisoner must pursue before bringing suit:

> The Federal Bureau of Prisons ("BOP") has established an administrative remedy procedure through which an inmate can seek formal review of any complaint regarding any aspect of his imprisonment. 28 C.F.R. § 542.10. In order to exhaust an appeal under the administrative remedy process, an inmate must first raise his complaint with his unit team through an informal resolution attempt. *Id.* at § 542.13. If the concern is not informally resolved, the inmate may file an appeal to the warden of the institution where he is confined. *Id.* at § 542.14. The inmate must then further appeal an adverse decision to the Regional Director and then to the Central Office of the Federal Bureau of Prisons. *Id.* at § 542.15. No administrative grievance is considered to have been fully and finally exhausted until denied by the Bureau of Prisons's Central Office. *Id.* at § 542.15(a).

*Lee v. Strada*, 297 Fed. Appx. 86, 87 (3d Cir. 2008).

In support of their motion for summary judgment this case, the defendants submitted the declaration of John E. Wallace, Esq., an attorney-advisor with the United States Department of Justice, Federal Bureau of Prisons and the primary legal advisor to USP-Canaan, who has access to all BOP files relevant to the administrative grievance process. (Doc. 119-6.) Wallace attaches to his declaration a record of the 75 grievances and appeals filed by Lee between October 2005 and August 20008, as well as further details of potentially relevant

grievances. Lee has also previously submitted numerous documents relating to his grievances. (*See* Docs. 54, 61.)[1, 2]

Although the complete lack of even approximate dates in all three of Lee's complaints makes it difficult to determine which grievances relate to the his claims, the following appear to be relevant to his exhaustion of administrative remedies.

On June 26, 2006, Lee filed grievance number 418025, which states in relevant part:

> Informal resolution (BP-8) not resolved due to me initially not wanting to go into detail for fear of my life. Yet, the retaliation from Warden Lindsey and his staff has me in need of mental and physical hospitalization. You have staff here involved in violation of selling porn off the internet to inmates, husband & wife / siblings working the same shift (code of ethics) racial discrimination towards African

---

[1] No explanation was given as to what these documents were when they were filed. They were simply accompanied by a letter which states "Evidence for civil action 4:06-CV-01824 that the plaintiff, Miles Orlando Lee would like documented please!" Many of the same documents appear in both submissions. Where this occurs, the Court will refer to Doc. 54, which is organized, to some slight extent, into separate "exhibits" of related documents.

[2] In his objections to the Report and Recommendation, Lee asks the Court to review several hundred pages of motions, exhibits, and "sworn affidavits" he has submitted throughout this case, including these documents, but does not specify what facts that Court should be looking for or how they might preclude summary judgment. (Doc. 133 at 1-2.) "Judges are not like pigs, hunting for truffles buried in the record." *Doeblers Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006). It is the non-moving party's obligation in opposing summary judgment to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Lee's merely asking the Court to review the voluminous record in this case is insufficient to fulfill this duty. Nevertheless, the Court has independently reviewed the documents to which Lee has cited.

Americans as for a teacher asking to use the word "nigger" from class
to explain that word is part of our culture, causing mayhem between in
mates with the law library (10) terminals for at least (1100) inmates,
staff trying to take my business plan for their own personal gain, staff in
the mail room tampering with legal mail, sexual entrapment by female
teachers in the school (<u>why I quit</u>)
<u>pay grade also</u>

(Wallace Decl., Att. C [all as in original]). Lee also attached two additional

handwritten pages to the BP-9 grievance form in which he further complained of

retaliation by USP-Canaan staff, being placed in a dirty cell with a broken toilet,

and missing property. This grievance potentially relates to two claims Lee raises

in this action: that Warden Lindsey retaliated against him and that he was placed

in a dirty cell with a broken toilet for a few days. (Second Amend. Compl. at 2, 9.)

On June 27, 2006, the administrative remedy coordinator at USP-Canaan rejected

this grievance and returned it to Lee, explaining that BOP regulations require each

BP-9 to address only one issue, that Lee must provide more details about his

grievances, and that Lee may only submit one page in addition to the BP-9 form.

*See* 28 C.F.R. § 542.14(c)(2), (3). Lee was instructed that he could resubmit the

grievance within five days.

Wallace's declaration states that Lee did not resubmit this grievance or file

an appeal (Doc. 119-6 ¶ 9), and the BOP records attached to the declaration

confirm this (*Id.* at 11). Lee, however, argues that he filed a BP-10, which was

6

never responded to. (Doc. 131 at 4.) Lee submitted to the Court a handwritten

letter (Doc. 54-2 at 8-10) dated June 29, 2006 which purports to appeal an

unspecified grievance, presumably number 418025. The letter, while containing

the salutation "Dear Regional Director", contains no mailing address, and there is

nothing on the document to indicate whether or when it was sent or received.

Even assuming, however, that Lee sent this appeal on the date indicated [3],

his attempted appeal is not sufficient to exhaust his administrative remedies. As

noted above, "the PLRA requires 'proper exhaustion,' meaning that the prisoner

must comply with all the administrative requirements." *Williams*, 482 F.3d at 639.

Lee's purported appeal does not do so. The handwritten letter is not on the

designated form as required by BOP regulations. *See* 28 C.F.R. § 542.15(b). That

Lee was aware of this requirement and how to comply with it is demonstrated by

the numerous other appeals he filed on the proper form. (*See, e.g.*, Doc. 54-3 at 5,

8; Doc. 54-4 at 7, 9, 11, 14, 16.) In addition, BOP regulations do not provide for

an appeal from a rejection of a BP-9. Inmates who are not satisfied with the

warden's response to a grievance may file an appeal to the regional director. *See*

28 C.F.R. § 542.15(a). But because Lee's grievance did not meet the

---

[3] This is a large assumption given the Court's finding that Lee has misrepresented the dates of his filings. (*See* Doc. 101 at 6-7.)

administrative filing requirements, it was rejected by the administrative remedies coordinator, *see id.* at § 542.17(a), and thus Lee never received a response from the warden. An inmate may only appeal such a rejection where he is not given an opportunity to correct the defect and resubmit the grievance. *See id.* at § 542.17(c). Here, however, Lee was given the required written notice by the administrative remedy coordinator, explaining the reason for the rejection and was informed of a reasonable time extension within which to correct the defect and resubmit his grievance. *See id.* at § 542.17(b). Moreover, in addition to the administrative impropriety of Lee's purported appeal, the comprehensive BOP records submitted by the defendants indicate that no resubmission or appeal of the grievance was ever received by any BOP official. It was Lee's responsibility to pursue his grievance through all available appeals, *Spruill*, 372 F.3d at 227-28, 232, and "[w]hile the Third Circuit has recognized that 'compliance with the administrative remedy scheme will be satisfactory if it is substantial,' misfiling a grievance without ever following up or inquiring as to its status cannot be considered 'substantial.'" *Naranjo v. Brooks*, 2009 WL 792335, at *4 n.8 (E.D. Pa. Mar. 25, 2009) (quoting *Nyhuis v. Reno*, 204 F.3d 65, 77-78 (3d Cir. 2000)). The record reveals no genuine dispute regarding Lee's failure to exhaust his administrative remedies as to this grievance.

On October 24, 2006, Lee filed grievance number 431604 alleging that
Counselor Gambone and Case Manager Reibsome were improperly involved in
investigating a misconduct and tried to cover up their mistake by back-dating the
misconduct.[4] (Doc. 54-3 at 1, 2.) The allegations in this grievance track Lee's
allegations against Gambone and Reibsome in his initial complaint, filed on
September 18, 2006. (*Compare id. with* Compl. at 5.) However, an inmate must
exhaust administrative remedies *prior to* filing suit and "may not fulfill the
PLRA's exhaustion requirement by exhausting administrative remedies after the
filing of the complaint in federal court." *See Oriakhi v. United States*, 165 Fed.
Appx. 991, 993 (3d Cir. 2006) (noting "unanimous circuit court consensus" on this
point). Lee did not even initiate the administrative process with respect to his
claims against Gambone and Reibsome until more than a month after asserting
those claims in this action. Therefore, he failed to exhaust his administrative
remedies as to those claims.

On October 24, 2006, Lee also filed grievance number 431607, alleging that
Case Manager Moser read his legal mail and confronted him about it.[5] (Doc. 54-4

---

[4] The BP-9 form itself is dated October 20, 2006, but was not filed with prison officials
until October 24, 2006.

[5] Again, the BP-9 form itself is dated October 20, 2006, but was not filed with prison
officials until October 24, 2006.

at 1, 2.) Although this grievance was also filed after the commencement of this action, it potentially relates to a claim not raised until Lee's first amended complaint, filed on April 25, 2007.  In his amended complaint, Lee alleges that he gave the original complaint in this action to a corrections officer to make copies, that Moser ordered the officer to give her the complaint, and that after reading it, she confronted him about it in a "threatening", "intimidating", and "loud, aggressive way." (Doc. 48 at 2-3.)  Warden Lindsey responded to the grievance on October 30, 2006, indicating that the incident had been referred for investigation. (Doc. 54-4 at 3.)  Lee filed an appeal on October 31, 2006 (*id.* at 14), and on December 13, 2006, the Regional Director Scott Dodrill denied the appeal (*id.* at 6).  Lee attaches numerous other documents in this same "exhibit" (*see generally* Doc. 54-4), they all relate to other grievances.  Although he has not produced a copy of it, Lee must have filed an appeal of this grievance to the central office, because on January 4, 2007, the administrative remedies coordinator sent Lee a notice that his appeal was rejected because he did not submit a copy of his BP-9 or the warden's response and because parts his BP-11 form were illegible. (Doc. 54-6 at 5.)  The BOP records do not show that Lee ever resubmitted the appeal.  Therefore, Lee has failed to exhaust his remedies as to this claim.

10

Lee also submits documents relating to his appeal of a misconduct arising out of an incident with defendant Guy-Potter that occurred on October 25, 2006 (*see generally* 54-5). This is the incident involving Guy-Potter that Lee complains of in his first amended complaint, filed on April 25, 2007. (*See* First Amend. Compl. at 5). On November 14, 2006, a discipline hearing officer found Lee guilty of the misconduct, and on November 30, 2006, Lee appealed in grievance number 436628 (Doc. 54-4 at 11). On December 8, 2006, the administrative remedy coordinator notified Lee that his appeal was rejected for lack of specific information and informed Lee that he could resubmit the appeal within 10 days. Lee resubmitted the appeal on January 16, 2007. (Doc. 119-6 at 17.) Regional Director Dodrill denied the appeal on February 13, 2007. (Doc. 54-4 at 18-19.) On February 26, 2007, Lee filed an appeal to the central office (Doc. 61-2 at 6), which was denied on May 4, 2007 (*id.* at 7.) Thus, Lee did not complete the administrative process until after the filing of his first amended complaint, and therefore, he failed to properly exhaust his administrative remedies as to this claim.

In his objections to the Report and Recommendation, Lee also asks the Court to review several other documents he has filed in this case. Lee first points to a motion to amend his original complaint and documents submitted in support

thereof filed on October 18, 2006. (*See* Docs. 9, 10.)  In these submissions, Lee

set forth his allegations that certain USP-Canaan officials were retaliating against

him for filing the complaint in this action.  Nothing in these documents relates to

any attempt to utilize the administrative remedies process.

Lee next points to another motion to amend his complaint and documents

submitted in support thereof on November 14, 2006. (*See* Docs. 11, 12.)  Along

with additional allegations of retaliation and complaints about too many family

members and lovers working at the prison, Lee stated, without further elaboration,

that "Counselor Hicks ... has attempted to sabotage my grievance on her and her

friend Case Manager Moser by trying to "TRICK" me into not following

procedure pertaining to the Administrative Remedy Program." (Doc. 12 at 1

[emphasis in original].)  Lee also stated that he was enclosing "a response from the

Warden to me about a sworn affidavit I sent him explaining that I am not being

allowed to use the Administrative Remedy Program here efficiently"; however, no

such document was enclosed. (*Id.*)  Lee then goes on to complain that he had yet

to receive a response to a grievance filed on October 20, 2006. (*Id.* at 2.)

While an administrative remedy may be unavailable, such that it need not be

exhausted, if a prisoner is prevented by prison authorities from pursuing the prison

grievance process, *McKinney v. Guthrie*, 2009 WL 274159, at *1 (3d Cir. Feb. 3,

2009), Lee's unsupported and conclusory allegations of attempts to trick him and inefficiencies in the grievance process are insufficient to create a genuine issue regarding the availability of administrative remedies, *Garcia v. McArdle*, 2008 WL 4415590, at \*9 (M.D. Pa. Sept. 25, 2008); *cf. Hill v. Smith*, 186 Fed. Appx. 271, 273-74 (3d Cir. 2006).  As to Lee's complaint that he did not receive a response to his October 20, 2006:  as detailed above, the documents submitted by Lee himself demonstrate that prison officials responded to both of his grievances filed on that date.

## IV.   CONCLUSION

The Court's *de novo* and detailed review of the numerous documents submitted by Lee and the comprehensive BOP records submitted by the defendants reveals that Lee did not properly exhaust his administrative remedies. Therefore, the Court will adopt the Magistrate Judge recommendation that the defendants be granted summary judgment and Lee's complaint be dismissed.  An appropriate order will be entered.